IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs September 22, 2010

## STATE OF TENNESSEE v. FRANK EDWARD NIXON

**Appeal from the Criminal Court for Davidson County**
**No. 2007-B-1823   Randall J. Wyatt, Jr., Judge**

---

**No.  M2009-01047-CCA-R3-CD  - Filed September 29, 2010**

---

Appellant, Frank Edward Nixon, Jr., was indicted by the Davidson County Grand Jury for attempted first degree murder.  Pursuant to *Hicks v. State*, 945 S.W.2d 706 (Tenn. 1997); he pled guilty to attempted voluntary manslaughter, a Class D felony, in exchange for a negotiated, out-of-range sentence of eight years as a Range I, standard offender,.  The trial court held a sentencing hearing to determine the manner of service of the sentence.  After the hearing, the trial court denied alternative sentencing, finding that confinement was necessary: (1) to avoid depreciating the seriousness of the offense; (2) to protect society from Appellant's conduct; and (3) because measures less restrictive than confinement had been unsuccessfully applied to Appellant.  Appellant filed a timely notice of appeal.  On appeal, Appellant contends that the trial court improperly denied alternative sentencing.  After a thorough review, we determine that the trial court properly denied alternative sentencing. Accordingly, the judgment of the trial court is affirmed.  However, the matter is remanded to the trial court for entry of a corrected judgment to reflect that Appellant pled guilty to attempted voluntary manslaughter, a Class D felony.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed**
**and Remanded**

JERRY L. SMITH, J., delivered the opinion of the court, in which DAVID H. WELLES and ROBERT W. WEDEMEYER, JJ., joined.

Emma Rae Tennent, Assistant Public Defender, on appeal, and Jonathan F. Wing, Assistant Public Defender, at trial, for appellant, Frank Edward Nixon.

Robert E. Cooper, Jr., Attorney General and Reporter; Renee W. Turner, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Ben Ford, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

*Factual Background*

In April of 2007, Appellant was indicted by the Davidson County Grand Jury for the attempted first degree murder of Joseph Mark Chandler on February 9, 2007. The incident occurred at the Nashville Rescue Mission, where both men were staying at the time. Appellant stabbed Mr. Chandler approximately fifty times with a knife.

On April 7, 2009, according to the transcript of the guilty plea hearing, Appellant pled guilty to a reduced charged of attempted voluntary manslaughter, a Class D felony.[1] As part of the plea agreement, Petitioner accepted an out-of-range sentence of eight years, pursuant to *Hicks*. The manner of service of the sentence was to be determined by the trial court at a later date.

At the guilt plea hearing, the facts were summarized by the State as follows:

[O]n February 9th of 2007, at 7:30, in the morning, [Appellant] entered the Rescue Mission at 639 Lafayette Street here in Davidson County. At that point in time, he recognized the victim, Mark Chandler. He had had an incident about a week or so prior. They both admit they had an altercation. They were sitting in the t.v. room of the Rescue Mission. [Appellant] exited the Mission to smoke a cigarette, re-entered the mission and went to his locker and obtained a knife. At that point he left the mission again but returned and the victim had actually fallen asleep in a chair and the defendant walked out to him and began stabbing the victim and chasing him around the t.v. room. The victim fell to the ground and continued [sic] to stab him in the back. Other witnesses were able to detain [Appellant]. The police were called to the scene and the victim was transported to Vanderbilt Hospital. The victim sustained approximately fifty stab wounds. And he was in the hospital for about a week.

___

[1]The judgment form, however, reflects that Appellant pled guilty to attempted second degree murder, a Class B felony. At the hearing on the guilty plea and at the sentencing hearing, the trial court indicated that Appellant pled guilty to attempted voluntary manslaughter, a class D felony. The judgment form lists "att 2nd degree murder" as the conviction offense and Class B is circled. There is no amended judgment in the record. When there is a conflict between the transcript and the judgment form, the transcript controls. *See, e.g., State v. Moore*, 814 S.W.2d 381, 383 (Tenn. Crim. App. 1991). We must remand the matter for entry of a corrected judgment. On remand, the trial court should enter a corrected judgment to reflect Appellant's conviction as attempted voluntary manslaughter, a Class D felony.

The police interviewed [Appellant] at the station and [he] signed and admitted to stabbing the victim. . . . The victim is happy with the settlement.

The trial court accepted the guilty plea at the conclusion of the hearing.

At a sentencing hearing, the trial court heard testimony from the victim, Mark Chandler. At the time, he was thirty-six years old and lived at the Rescue Mission. Mr. Chandler recalled meeting Appellant about two weeks prior to the stabbing during a drug transaction. The two men got into a physical altercation regarding the price and amount of marijuana Mr. Chandler was going to sell to Appellant. Mr. Chandler did not recall specifics of the fight but contemplated that Appellant was the winner.

On the morning of the stabbing, Mr. Chandler fell asleep in a chair in the common room of the Rescue Mission. When he awoke, he had the feeling that he was being punched in the chest. When he opened his eyes, he saw Appellant stabbing him with a knife. Mr. Chandler tried to run away; Appellant continued to stab him.

Mr. Chandler had surgery to repair his lungs and was in the intensive care unit for four days. At the time of trial, he was still experiencing numbness in one of his hands.

Appellant took the stand at the hearing. Appellant testified that in early 2007 his marriage was suffering. Appellant went to live at the Rescue Mission and started using drugs again. Appellant met Mr. Chandler during a drug transaction on Murfreesboro Road. Appellant tried to call off the deal during the transaction. According to Appellant, Mr. Chandler got belligerent and refused to call off the deal. The men fought. Appellant testified that Mr. Chandler and another man held him to the ground while beating him and searching his pockets. Mr. Chandler stole Appellant's wallet. Appellant's glasses were also knocked off during the altercation.

Appellant testified that he saw Mr. Chandler about three or four days later at the Rescue Mission. When Appellant saw Mr. Chandler that morning, he felt nervous and frightened. Appellant's glasses and clothing were missing. Appellant claimed that he got a knife from his locker because he was afraid of Mr. Chandler. Appellant stated that when Mr. Chandler fell asleep, Appellant stabbed him.

Appellant introduced proof at the sentencing hearing to show that he was raised in Georgia and entered the Air Force after high school. Appellant served in the Air Force for four years before being honorably discharged. Appellant later served in the Air National Guard. Appellant had several years of college from Savannah University but did not graduate. Appellant testified that he started doing drugs while he was in the military in order

to cope with "traumatic things that happened to [him] on Okinawa." Appellant testified that his drug use led to a theft conviction in 1990. Appellant also admitted that he had charges for failure to pay chid support and assault.

In addition to his military background, Appellant has had several jobs in the restaurant business, HVAC installation, a volunteer preacher, and mentor for children at the Juvenile Justice Center.

Appellant has several health issues, including hypertension and Hepatitis. Appellant sought help with these chronic conditions through Nashville Cares. Appellant had a placement pending in a recovery house in the event that the trial court granted probation.

At the conclusion of the sentencing hearing, the trial court determined:

I'm not saying that this man right here, [Appellant], doesn't have good qualities. And I'm not saying that he doesn't have some certificates. I'm not saying he wasn't a minister. I'm not saying that he didn't have a nice lady. And I'm not saying he's not a good man and that his parents [are] probably as good as they can be. God bless them. I'm not saying any of that is bad. . . .

This man was, apparently, either dozing off or resting or whatever and this gentlemen did this act. Now, this happened on February the 9th, apparently, of '07. In the year of '06, this man right here, [Appellant] I've already said [had] some good qualities was convicted of assault and went to [become] some kind of save[d] person. He was put on probation. He violated probation. He went to Buffalo Valley for a couple of months and was terminated. He was convicting [sic] in 2001 of assault, here, in Davidson County. Got a nine month sentence at thirty percent, suspended all but ten days, put in an anger management course. Later on, apparently, that was revoked. He had a criminal trespass charge here.

He had all of these different charges. . . .

. . . .

But the Court is not of the opinion that this is a kind of case for probation. But for the grace of God, who he professes to believe in. I take him, clearly, at his word. I think he's sincere about those things, this man would have been dead. I mean, he was stabbed repeatedly, over and over, again. . . .

So the time he's served in jail, obviously, he gets credit for anything. And he'll be probably paroled within a year or so. But to put him out on probation after all of these different probation matters, when he's been given chances in General Sessions Court, two or three different times, and in other courts, I don't believe, is responsible for this Court. So I don't intend to depreciate the seriousness of this. . . .

In other words, the trial court denied probation. Appellant filed a timely notice of appeal, challenging the denial of alternative sentencing.

*Analysis*

On appeal, Appellant argues that the trial court improperly denied alternative sentencing. Specifically, Appellant argues that his sentence was "unwarranted and unnecessary" because the trial court inappropriately weighed the "nature of the offense" in denying probation. Further, Appellant argues that the trial court based its decision on speculation that Appellant would receive probation "in a year or so." Finally, Appellant argues that the trial court ignored Appellant's strong potential for rehabilitation. The State, on the other hand, argues that the trial court properly denied alternative sentencing after a consideration of all of the sentencing guidelines.

"When reviewing sentencing issues . . . , the appellate court shall conduct a de novo review on the record of the issues. The review shall be conducted with a presumption that the determinations made by the court from which the appeal is taken are correct." T.C.A. § 40-35-401(d). "[T]he presumption of correctness 'is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances.'" *State v. Carter*, 254 S.W.3d 335, 344-45 (Tenn. 2008) (quoting *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991)). "If . . . the trial court applies inappropriate mitigating and/or enhancement factors or otherwise fails to follow the Sentencing Act, the presumption of correctness fails." *Id.* at 345 (citing *State v. Shelton*, 854 S.W.2d 116, 123 (Tenn. Crim. App. 1992)). We are to also recognize that the defendant bears "the burden of demonstrating that the sentence is improper." *Ashby*, 823 S.W.2d at 169.

With regard to alternative sentencing, Tennessee Code Annotated section 40-35-102(5) provides as follows:

In recognition that state prison capacities and the funds to build and maintain them are limited, convicted felons committing the most severe offenses,

possessing criminal histories evincing a clear disregard for the laws and morals of society, and evincing failure of past efforts at rehabilitation shall be given first priority regarding sentencing involving incarceration . . . .

A defendant who does not fall within this class of offenders:

[A]nd who is an especially mitigated offender or standard offender convicted of a Class C D or E felony, should be considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary . . . . A court shall consider, but is not bound by, this advisory sentencing guideline.

T.C.A. § 40-35-102(6); *see also Carter*, 254 S.W.3d at 347. For offenses committed on or after June 7, 2005, a defendant is eligible for probation if the sentence actually imposed is ten years or less. *See* T.C.A. § 40-35-303(a) (2006).

All offenders who meet the criteria for alternative sentencing are not entitled to relief; instead, sentencing issues must be determined by the facts and circumstances of each case. *See State v. Taylor*, 744 S.W.2d 919, 922 (Tenn. Crim. App. 1987) (citing *State v. Moss*, 727 S.W.2d 229, 235 (Tenn. 1986)). Even if a defendant is a favorable candidate for alternative sentencing under Tennessee Code Annotated section 40-35-102(6), a trial court may deny an alternative sentence because:

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant . . . .

T.C.A. § 40-35-103(1)(A)-(C). In choosing among possible sentencing alternatives, the trial court should also consider Tennessee Code Annotated section 40-35-103(5), which states, in pertinent part, "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant should be considered in determining the sentence alternative or length of a term

to be imposed." T.C.A. § 40-35-103(5); *see also State v. Dowdy*, 894 S.W.2d 301, 305 (Tenn. Crim. App. 1994). The trial court may consider a defendant's untruthfulness and lack of candor as they relate to the potential for rehabilitation. *See State v. Nunley*, 22 S.W.3d 282, 289 (Tenn. Crim. App. 1999); *see also State v. Bunch*, 646 S.W.2d 158, 160-61 (Tenn. 1983); *State v. Zeolia*, 928 S.W.2d 457, 463 (Tenn. Crim. App. 1996); *State v. Williamson*, 919 S.W.2d 69, 84 (Tenn. Crim. App. 1995); *Dowdy*, 894 S.W.2d at 305-06.

At the sentencing hearing, the trial court stated that it did not want to depreciate the seriousness of the offense, commenting specifically on the number of stab wounds and the manner in which the attack occurred as well as the fact that the victim could have died. The trial court concluded that this was not the "kind of case for probation." Additionally, the trial court noted that Appellant had previously failed on probation several times. The trial court commented on Appellant's criminal history and lack of success at previous attempts at alternatives to incarceration. We conclude that the evidence presented supports the decision of the trial court, and the trial court did not abuse its discretion in ordering Appellant to serve the sentence in confinement. The evidence at the sentencing hearing showed that Appellant had several prior assault convictions and the victim suffered over fifty stab wounds during the attack. Further, Appellant had at least one instance of a probation violation and one instance of a revocation of probation. The trial court based its decision on all three subsections of Tennessee Code Annotated section 40-35-103(1). We find no evidence to support the reversal of the trial court's denial of full probation. Therefore, this issue is without merit.

*Conclusion*

For the foregoing reasons, the judgment of the trial court is affirmed. However, the matter is remanded to the trial court for entry of a corrected judgment to reflect that Appellant pled guilty to attempted voluntary manslaughter, a Class D felony.

_____
JERRY L. SMITH, JUDGE